_____

No. 95-2947
_____

Karen Wald,                              *
                                         *
          Appellant,                     *
                                         *     Appeal from the United States
     v.                                  *     District Court for the
                                         *     Eastern District of Missouri.
Southwestern Bell Corporation            *
Customcare Medical Plan;                 *
Southwestern Bell Corporation;           *
The Prudential Insurance                 *
Company of America,                      *
                                         *
          Appellees.                     *

_____

               Submitted: February 16, 1996

                    Filed: May 15, 1996
                              _____

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.
                              _____

WOLLMAN, Circuit Judge.

     Karen Wald appeals from the district court's[1] grant of summary
judgment to Southwestern Bell Corporation Customcare Medical Plan (the
Plan), Southwestern Bell Company (Southwestern Bell) and The Prudential
Insurance Company (Prudential) in this action brought under the Employee
Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA).  We
affirm.

**I.**

     Wald was a participant in a self-insured employee benefit plan
sponsored by Southwestern Bell.  Prudential was the plan

_____

[1]The Honorable Carol E. Jackson, United States District Judge
for the Eastern District of Missouri.

administrator. Wald suffers from ovulatory menstrual dysfunction and does not ovulate on a regular basis. In May 1991 she decided to undergo gamete intra-fallopian transfer (GIFT) in an attempt to become pregnant. The plan provides at least partial benefits in some instances for surgical procedures that are medically necessary. Section 4.8 of the plan, however, provides in relevant part, that:

> Notwithstanding anything contained in this Plan to the contrary, the following items shall not be covered by the Plan:
>
>      . . . .
>
> DD.     Charges for actual or attempted impregnation or fertilization, involving either a Covered Individual or a surrogate as a donor or recipient, extrauterine conception, or pregnancy of a surrogate mother.

In preparation for the GIFT procedure, Wald received medications called Lupron and Pergonal in January 1992 to increase production of the egg follicles to be harvested during the procedure. On February 5, Wald underwent the GIFT procedure. During the surgery, Doctors Silber and Cohen discovered excessive follicles on Wald's ovaries. They aspirated the follicles as part of the GIFT procedure. The Lupron and Pergonal caused Wald to develop ovarian hyperstimulation syndrome, a serious medical condition, and she remained in the hospital until February 20, 1992. Because of the condition she developed, Wald would have needed the procedure to aspirate the follicles regardless of whether she underwent the complete GIFT procedure.

Wald filed a claim for medical benefits to cover the services. Prudential initially denied the claims related to both the GIFT procedure and Wald's subsequent hospitalization, reasoning that the plan did not provide coverage for actual or attempted impregnation or fertilization or for any resulting complications. Upon reconsideration, however, Prudential determined that because the

-2-

ovarian hyperstimulation was a direct consequence of the Pergonal, an eligible medication, coverage would be provided for the hospitalization from February 6 through February 20. Prudential reaffirmed its decision that the hospital and physician charges incurred on February 5 were excluded, as those charges involved actual or attempted impregnation or fertilization.

Wald appealed Prudential's decision to deny benefits for services rendered on February 5, contending that the denial of medical coverage for the GIFT procedure was discriminatory and would preclude her from receiving the best available medical treatment. Prudential denied the appeal, whereupon Wald submitted a letter on July 2, 1992, contending that the February 5 expenses were incurred as a result of complications from Pergonal and would have been incurred regardless of the GIFT procedure. Prudential again denied benefits. On December 7, 1992, Dr. Cohen sent a letter to Prudential in which he explained that the February 5 charges would have been incurred to treat Wald's reaction to Pergonal, whether or not the GIFT procedure was performed. Prudential reviewed the letter, but did not change its decision.

Wald alleged in Count I of her proffered amended complaint that Southwestern Bell, the Plan, and Prudential had wrongfully denied her claim. In Count II, she alleged that Prudential had breached its fiduciary duty in reviewing her claim. The district court granted Wald leave to file the amended complaint as to Count I, but denied her leave to file Count II, finding that a claim for breach of fiduciary duty under ERISA may be brought only where the duty is owed to the plan itself. The district court then granted summary judgment on Count I to Southwestern Bell, the Plan, and Prudential, finding that Prudential's interpretation was not contrary to the clear language of the plan.

Wald argues on appeal that the district court erred in denying her leave to file Count II and in granting summary judgment against

her on Count I.  Wald challenges only the administrator's interpretation of the plan with respect to her claim; she does not challenge the lawfulness of the plan's exclusion of fertility treatments in general.

## II.

We review a district court's decision to deny leave to amend a complaint for an abuse of discretion.  Fuller v. Secretary of Defense, 30 F.3d 86, 88 (8th Cir.), cert. denied, 115 S. Ct. 583 (1994).  Leave to amend should be freely granted by the district court.  Id.  Leave may be denied, however, if amendment would be futile.  Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994).

The district found that adding Count II would be futile because an action for breach of fiduciary duty under ERISA may be brought only where the breach is of a duty owed to the plan itself.  Wald argues that the district court abused its discretion in denying the amendment, in that individual plan beneficiaries have a right of action for breach of fiduciary duty under ERISA.  Howe v. Varity Corp., 36 F.3d 746 (8th Cir.), clarified, 41 F.3d 1263 (8th Cir. 1994), aff'd, 116 S. Ct. 1065 (1996).

We may affirm the district court's decision on any ground supported by the record.  Monterey Dev. Corp. v. Lawyers Title Ins. Corp., 4 F.3d 605, 608 (8th Cir. 1993).  Putting aside the district court's views concerning an individual plan beneficiary's right to bring an action for breach of fiduciary duty, the court correctly determined that Wald did not state a cause of action.

Wald requested in her proposed amended Count II that the court enjoin Prudential to take steps to pay Wald and that the court declare that Prudential breached its fiduciary duty.  She also requested attorney's fees for prosecuting the claim.  She brought

-4-

her claim pursuant to ERISA sections 502(a)(2), 502(a)(3), and 502(g), which provide, in relevant part:

> (a) A civil action may be brought--
>
> . . . .
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section [409, 29 U.S.C. §] 1109 of this title;
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
>
> . . . .
>
> (g)(1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1132(g).

In <u>Varity Corp. v. Howe</u>, 116 S. Ct. 1065 (1996), the Supreme Court recently clarified the circumstances under which an individual may sue for breach of fiduciary duty under ERISA. In that case, individuals sued their former employer, which had induced them to join the plan of a subsidiary by misrepresenting to the employees that they would receive the same benefits from the subsidiary. The Court held that the employees were entitled to injunctive relief reinstating them to the former employer's plan under section 502(a)(3). In reaching its decision, the Court distinguished its previous holding in <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134 (1985), primarily on the ground that <u>Russell</u> dealt with section 502(a)(2), rather than section 502(a)(3). <u>Howe</u>, 116 S. Ct. at 1076. Under <u>Russell</u>, Wald does not have an individual cause of action under section 502(a)(2). <u>See</u>

<u>Russell</u>, 473 U.S. at 142.

The Court also noted that section 502(a)(3) authorizes only "appropriate" equitable relief. The Court stated that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be `appropriate.'" <u>Id.</u> at 1079. Because Wald is provided adequate relief by her right to bring a claim for benefits under section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), as she did in Count I, and she seeks no different relief in Count II of her complaint, equitable relief would not be appropriate in her case. Thus, she does not have a cause of action under section 502(a)(3).

## III.

The district court found that Prudential did not abuse its discretion in interpreting the plan to exclude the GIFT procedure. We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party. <u>Marshall v. UNUM Life Ins. Co.</u>, 13 F.3d 282, 283 (8th Cir. 1994).

It is undisputed that the plan at issue grants Prudential discretionary authority to interpret the plan. Thus, we review Prudential's decision as plan administrator for an abuse of discretion. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Donaho v. FMC Corp.</u>, 74 F.3d 894, 898 (8th Cir. 1996). We reject Wald's argument that ERISA's requirement that a summary plan description (SPD) be sufficiently comprehensive to apprise participants of their rights under the plan, <u>see</u> 29 U.S.C. § 1022(a)(1), requires the SPD to contain a description of the

administrator's discretion.[2]

Wald argues that because Prudential failed to conduct a full and fair review of her claim, the deferential standard of review should not apply. Heightened review may apply if the beneficiary shows that a serious procedural irregularity existed which caused a serious breach of the administrator's duty to the plan beneficiary. Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996). The deferential standard will apply, however, unless the beneficiary comes forward with evidence establishing that the administrator acted under a conflict of interest, dishonestly, with an improper motive, or without using judgment. Id. at 899-900.

Wald notes that Prudential did not obtain all of her hospital records and did not provide her with detailed reasons regarding the denial of her benefits. We interpret these assertions as alleging that Prudential failed to use judgment in rendering its decision or that its decision was arbitrary. The record shows, however, that Prudential conducted a full and fair review of the information before it and clearly explained to Wald that she was denied coverage because the plan specifically excluded attempted impregnation or fertilization. Cf. Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 573-74 (8th Cir. 1992) (trustee failed to provide adequate explanation by simply stating beneficiary had not provided sufficient evidence). Although Wald did not specifically raise the medical necessity of the GIFT procedure until the internal appeal process was exhausted, Prudential nevertheless reviewed the additional documents. Wald's assertions that Prudential conducted an inadequate review are belied by the fact that Prudential reversed its initial decision not to provide benefits for her hospitalization from February 6 through 20. We

---

[2]Wald's motion for leave to file a supplemental appendix containing a copy of the Summary Plan Description is granted.

conclude, therefore, that the abuse of discretion standard governs our review of Prudential's decision.

The abuse of discretion standard requires us to determine whether the plan administrator's decision was reasonable; that is, whether a reasonable person could have reached the same decision. Donaho, 74 F.3d at 899. In determining whether Prudential's interpretation was reasonable, we consider five factors: (1) whether Prudential's interpretation is consistent with the plan's goals; (2) whether the interpretation renders any of the plan's language meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (4) whether Prudential has interpreted the words at issue consistently; and (5) whether the interpretation is contrary to the plan's clear language. See Finley v. Special Agents Mut. Ben. Ass'n, 957 F.2d 617, 621 (8th Cir. 1992).

We find that Prudential's interpretation is consistent with the goals of the plan. Although one goal of the plan is to provide benefits for procedures that are medically necessary, another goal is to exclude benefits for fertility procedures, as the terms of the plan expressly provide. The record supports Prudential's position that Wald's purpose in undergoing the procedure was to become pregnant and that the doctors did not know going into the surgery that the procedure was medically necessary. An evaluation of the purpose of the surgery is consistent with the plan's goals.

The GIFT procedure took place on February 5, the date set in advance before there was any indication that Wald's health was at risk, and it was paid for by Wald in advance. Dr. Cohen testified in his deposition that on February 6, 1992, he suspected that there was possible ovarian hyperstimulation syndrome and elaborated that, "I think I expected it before that, even prior to the aspiration." He also testified, however, that the doctors treating Wald "were sensitive to the fact that [she] might develop hyperstimulation,"

and that they gave her albumen at the time of the surgery in an attempt to "ward [the hyperstimulation] off."

Dr. Cohen's notes following surgery indicate that the surgery went "without difficulty," although during the surgery it was noted that the ovaries were "markedly enlarged."  In addition, Dr. Thomas Pohlman was asked for a consultation by Dr. Cohen, and he stated in his consultation notes that "[t]he harvesting went uneventfully.  However, postop [Wald] developed increasing ascites, was found to have markedly enlarged ovaries and felt to have ovarian hyperstimulation syndrome."

Dr. Cohen's letter to Prudential, which stated that the Pergonal, and not the GIFT procedure, was the reason for the medical expenses, is not supported by the record.[3]  Thus, we find that Prudential's interpretation is consistent with the goals of the plan.

Although the plan elsewhere provides coverage for surgery that is medically necessary, Prudential's interpretation of the exclusion for the GIFT procedure does not render any language in the plan meaningless or internally inconsistent.  The provision excluding fertilization expressly provides that the exclusion applies "[n]otwithstanding anything contained in this Plan to the contrary."

ERISA does not create any substantive entitlement to employer-provided health benefits, Curtiss-Wright Corp. v. Schoonejongen, 115 S. Ct. 1223, 1228 (1995), and Wald does not allege that the

---

[3]We also find that Prudential was reasonable in excluding the hospitalization on February 5, as well as the GIFT procedure.  Dr. Cohen testified in his deposition that normally after the GIFT procedure, the patient is discharged the same day or the next day. It was thus reasonable for Prudential to find the hospitalization was related to the procedure, rather than to complications from the Pergonal.

plan is unlawful in excluding benefits for fertility procedures. The procedural requirements of ERISA regarding the review process were met, as discussed earlier. The record contains no admissible evidence showing that Prudential has not interpreted the plan consistently. <u>See</u> <u>Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.</u>, 69 F.3d 868, 871 (8th Cir. 1995) (hearsay testimony inadmissible to support summary judgment opposition).

We conclude that because Prudential's interpretation satisfies <u>Finley</u>'s five-factor test, its decision to exclude benefits for the procedure was reasonable and thus must be upheld.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.